Good morning, your honors. May it please the court, Elizabeth Richardson-Royer on behalf of the appellant Ricardo Velasquez. I plan to reserve two minutes for rebuttal, but I will watch the clock. And I had intended this morning to address the claim of ineffective assistance of counsel on the third-party culpability issue, and then, if time permitting, address the two interrelated fingerprint claims. But if the court would like to go out of order, please feel free to interrupt me. As the court is aware, Ricardo Velasquez was found hiding in a trash can with a gun that was a different caliber than the gun used in the shooting. He told police when questioned that he participated in the robberies, he was the driver of the Jeep that was his relative's car when the shooting occurred, and that he was not the shooter. He told trial counsel the same thing mere months later, more than a year before trial. And yet trial counsel inexplicably refused and failed to investigate the identity of the shooter, which Mr. Velasquez provided to counsel. And if he had done so, he would have discovered this evidence that the shooter had confessed to the shooting prior to his death. Do we know that he failed to investigate? Or do we know just what the file seems to perhaps indicate on the basis of even a lack of a declaration concerning what the file doesn't contain? We do not know with certainty, Your Honor. There is no declaration from trial counsel. What we do know is that Mr. Velasquez has submitted a declaration, which in the state court is to be taken as true at the prima facie case stage, where he says the trial counsel told him there was nothing to be done. So this is not a silent record. But that doesn't mean that nothing was done. The other evidence that nothing was done is that there was a failure to investigate claim brought by the habeas lawyer who had the file, which indicates there was nothing in the file, and the fact that these three witnesses were easily identified, as the district court found, by the habeas investigator. They were never contacted. They were never interviewed by defense counsel, which is strong evidence that nothing was done or that not enough was done in this case. And as the district court found, you know, that could constitute deficient performance, and I think that's the reasonable conclusion on these facts. Could you address the prejudice component of Strickland and, in particular, the state's suggestion that because the jury was instructed on an aiding and abetting theory, even if he was the driver rather than the shooter, he still would have been convicted? Yes, Your Honor, and I'm glad you asked because there is a point that I want to make, which isn't in the briefing, and I apologize for that, which is that even if the jury would have convicted him as an aider and abetter, and I obviously dispute that they would have, he got a 20-year consecutive sentencing enhancement for personal discharge of a firearm. And so even if he were convicted as an aider and abetter, but the jury thought that he was not the shooter, which it would have thought if counsel had performed effectively, he would not have received that 20-year enhancement, which is a big difference for him, because with it, he would have been potentially eligible for parole at 50 years of age, and without it, and with it, he'll be 70. And the enhancement requires personally, so he could not get the enhancement on an aiding and abetting theory? That's correct, Your Honor. So he could still be convicted of the offense, but that enhancement, which is the 20-year enhancement, requires the jury to find that he personally used the firearm. So if the jury had a question about that, they don't find that fact true, and he doesn't receive that 20-year enhancement. It's an important point that I regret not having made in the briefing. Oh, yeah, because I was not aware of that until right this minute. Yes? We might, depending on argument from the other side, we may ask for supplemental briefing to flesh that out. Yes, Your Honor. I mean, I think if you look at the judgment and commitment order, there's no question that, and if you look at the verdict forms as well, the jury found that true. It's California Penal Code Section 12022.53C, and it requires the personal use of a firearm during one of these offenses. So it's a pretty straightforward argument, but I obviously would be happy to brief it. Okay. Putting to one side then the possibility of finding no prejudice based on aiding and abetting, juries all the time look past what appear to be sort of after-the-fact, nobody-gets-hurt affidavits. The other person who might have been the shooter is dead, so nobody gets hurt by them saying he was the shooter. How do we know or at what level of confidence do we have that the jury would have been influenced by these three declarations? I think that's a very good question, and if there were no evidence already in the record that he wasn't the shooter, I would say maybe the jury is not inclined to look at this with any, you know, give this any weight. But that's not the case here. You know, he's maintained from the time he was questioned that he wasn't the shooter. He's found with a different gun than the one used in the shooting. The only evidence, you know, pointing to him as the shooter is this eyewitness identification, which is really problematic in a lot of ways, you know, both the circumstances of the initial viewing where this panicked police officer is executing a U-turn and claims that he's, you know, handcuffed, being led from the police car into the police station prior to identifying him. So that's the only evidence that he's the shooter. And then there's this other evidence in addition to the three new witnesses. You know, he's found with a different gun, and he maintains the whole time that he was the driver of a car that was his family's car. So I think, you know, this is already a case where there is evidence on both sides, and having this additional evidence which identifies the shooter would have been really critical to the jury, and especially looking at we only have to show a reasonable likelihood of a different outcome. That's one juror having reasonable doubt. I think we satisfied that standard here. Well, you have to show that the state, you know, was unreasonable in thinking that there wouldn't have been a reasonable likelihood of a different outcome. Yes, Your Honor. So it's filtered through the additional deference from that. That's correct. And I think on these facts with the question being as close as it was with the new evidence, to the extent that the state court found that there was no reasonable likelihood of a different result with these three witnesses coming forward with consistent accounts corroborated by other evidence in the case, that is an unreasonable application of clearly established federal law. And did the state habeas court have before these three declarations? State habeas court had everything. It was an identical petition presented to the state court. So there's no issue of our having additional evidence. It's entirely based on the record that was in front of the state habeas court. That's correct, Your Honor. Why don't we hear from the other side and then you've got some time. Okay. Thank you. Thank you, Your Honors. May it please the Court, Christopher Wrench on behalf of the state. The state court here could reasonably find that defense counsel was not deficient under Strickland. The state record was incredibly sparse as to what trial counsel actually did in his investigation. There was no evidence presented to the state court from trial counsel's file, from trial counsel himself establishing what investigation was or was not done. But it was pretty clear he didn't find these three declarants. It's clear he didn't call these three declarants. Well, it's pretty clear he didn't present anything from them. Any competent lawyer, if he had found them, would have presented these documents. I would agree he didn't present them. I would not agree that any competent lawyer would have presented these three witnesses on these facts, given that we don't know much about these three witnesses. Could you address the point about aiding and abetting? Yes. We do agree that the 20-year enhancement could not be imposed under an aiding and abetting theory. The attempted murder conviction would still stand under an aiding and abetting theory, but not the enhancement. So at least 20 years are at stake here? Correct. Tell me more about what we know and don't know from the attorney and why you think it was a reasonable or might have been a reasonable thing for the attorney to have done. What we know for sure is that these declarations were never presented at trial, and it seems to me we can make a pretty clear inference that the lawyer did not have them in his possession. Tell me more about what we know about this lawyer. We don't know what this attorney did. We have two sentences from Mr. Velazquez in his own declaration. That's the extent. And do we know why we don't know more? Was this attorney dead? I mean, what happened? The record is completely unknown about that point, and that gets to the absence of evidence, and it was Velazquez's burden to make that evidentiary showing in the state court to marshal evidence detailing what he deemed was counsel's failure to investigate. But we can't know there was a failure to investigate without a showing of what the investigation was. Well, we have Velazquez's testimony. He says, I told my lawyer about Fernandez, and he said, you can't do anything because Fernandez is dead. But as Judge Pregerson pointed out, that doesn't mean anything wasn't done, and it also doesn't say this was our only conversation about this issue. It doesn't say counsel categorically said, I'm not doing anything ever under any circumstance. What sort of evidence do you think would have been sufficient for him to show that the lawyer had not investigated the issue? First of all, we know the state habeas counsel had the trial counsel's file, so we could have seen what was in the file. Maybe there was a note in there saying not pursuing Fernandez's angle or something along those lines or a declaration from trial counsel himself saying, yeah, he told me about Fernandez, but I didn't want to go down that road. I mean, those are the types of evidentiary showings where we have affirmative evidence of counsel's investigation. That's sorely lacking here, and a fair-minded jurist could agree with the state court that on this record that's speculation and it's insufficient to overcome Strickland's presumption of competence. Well, we know this lawyer seems to have dropped the ball at every possible opportunity, don't we? I mean, this is sort of an alibi case. Were you driving or not driving? It's not rocket science. And, you know, the fact that the file is so thin, doesn't that tell us really everything that we need to know? It's consistent with the way this lawyer seemed to have behaved all the way through. Your Honor, I would disagree with that. We don't know the file's thin because we don't know what the file is. It was not presented to the state court. It was not described by the habeas investigator or habeas counsel to the state court. We have been given nothing, even though it was available from Velazquez, and a fair-minded jurist could readily look at the production of weak evidence of two sentences from Velazquez while not presenting trial counsel's file and draw a reasonable inference that trial counsel's file probably would undermine Velazquez's claim. Because if it supported his claim, why wouldn't the habeas counsel put that in the state court record? Can I ask a question about Brady? How does that speak to that issue that's been raised? Yes, Your Honor. The Brady claim fails because it's speculative. There's no evidence that exculpatory fingerprint testing exists. Isn't the record somewhat inconsistent in that regard? Aren't there statements about testing being done, reports, cards? Is it that black and white? A fair-minded jurist could readily read it as being black and white. There are fingerprint cards that are undisputably in the police department's possession, but the cards are taking the fingerprints and putting them on the cards is a much different thing than actually testing them. And Officer Kaufman at trial specifically testified that had the cards met sufficient criteria, he would have submitted them for testing, but he didn't recall that those criteria were satisfied and he didn't recall submitting them for testing. What were those criteria? It was not described in the record. The inference is the quality of the fingerprints such that they could be accurately tested. When he says he doesn't recall, you know, that's always a confusing word because it can mean two things. Well, it's true it's not a definitive statement that they weren't tested, but a fair-minded jurist looking at the record could infer that that means they weren't tested. And then there's also the discovery communications from the prosecutor where the prosecutor expressly says there's no testing, that we don't have any lab results, we don't have any test results. That's consistent with the officer's testimony. And the cards, I think, were made available to the defense. That's correct. And the defense could have tested them? The defense could have tested them and the officer. Sounds like one more suggestion of incompetence on the part of the lawyer. Well, I would say a fair-minded jurist would look at it differently and say that's consistent with the cards not being of sufficient testing quality. That defense, the presumption is counsel did the competent thing rather than the neglectful thing. We know that fingerprinting is imprecise. We also know that when the issue is whether or not they're my fingerprints or somebody else's fingerprints, a partial fingerprint will very often exclude the possibility that they're mine. So even if the quality of prints isn't very bad, they could prove very useful to this defendant if the fingerprints are on the roof or on the side of the car from which the shooter was and so on and none of the fingerprints are his, a partial fingerprint will very often exclude. So even if they're not of very good quality, my guess is that they would have shown that. Well, they would have to be of a quality to link to some person so that they could be excluded. Well, not necessarily link to some person. That is to say, here I am, the defendant. I was driving, I say. Fernandez got up. He went through the sunroof, stood up, and shot, and there are fingerprints right around the sunroof on the roof. They're not mine. That would be very helpful to the defendant. If the fingerprints were of a sufficient quality to compare to Velazquez, but there's no evidence that that's... but it will very often exclude. It's possible, but there's no evidence that that's the case here, and there's no evidence that counsel didn't pursue. And do those fingerprint cards still exist? Do you know? It appears that they're still with the police department based on the responses. I mean, this case just smells bad. Nothing happened that should have happened in the hands of a competent defense lawyer. Well, Your Honor, Strickland says we presume competence, and Velazquez hasn't shown incompetence. He's shown speculation, and he has withheld evidence. For my purposes, I'm not sure you need to show much more than that Velazquez says Fernandez did it. The declarations of the friends and relative of Fernandez, three of them, say he repeatedly bragged that he did this. Those were easily found. The defense did not present them, from which I think we may infer with great confidence that he didn't have them. I'm not sure I need a lot more to show incompetence. Well, I think a fair-minded jurist would require more, and I'm almost out of time, but if I could make two points. Please go ahead. Thank you, Your Honor. The first is we don't know that these witnesses were easily findable contemporaneous with trial counsel. We know habeas counsel found them several years later, but habeas counsel showed a lack of candor in not telling us how he found them. So we don't know. Was he asked, and he refused to answer? He submitted a declaration. Lack of candor is a pretty severe charge. Why do you say lack of candor? Because he said my habeas counsel found these witnesses. He didn't tell us how he found them. And why is that a lack of candor? Because how he found them is critical to assessing whether trial counsel at the time of trial reasonably should have found them. We can't compare. Two of them. One of them, at least, was a relative. How hard would that person have been to find living 20 miles away? Well, there's two components to that. Why would reasonable counsel think that Fernandez is running his mouth confessing to a crime? That's searching for ñ it's not ñ somebody who shoots at a police officer doesn't automatically start telling his friends. So why would a reasonable counsel start randomly interviewing friends and families in the hope that this individual confessed? Because when someone's dead, you don't have a lot of options. So you try to find out, are there photographs of this guy with a gun? Are there other people that know where he was that might know something about him or his attitude? I mean, that seems like just sort of basic investigative work 101. Well, and that gets back to the lack of evidence of what trial counsel did. We don't know that trial counsel didn't do that because we don't have anything from the file. We don't have affirmative evidence to overcome. We know what he said. He said without context, without detail, and without reasonably available contemporaneous documentary evidence from the trial counsel's file. And are the arguments that you're making to us today, are they the same arguments you made in the district court? Yes, Your Honor. That is to say that we just need more information? Correct, Your Honor. And was there any request to the district judge for a stay in abeyance, like let's go back and supplement the record in state court? No, Your Honor. I'm certainly over my time, so if there are no further questions. Thank you. Thank you, Your Honors. Okay. I'll try to be brief. I have a lot that I want to say, but I'll limit myself. Listen, we took your adversary over time. You'll get a chance to say everything you need to say. Okay. Thank you. First, I'd like to address counsel's point about the lack of a declaration from trial counsel. And I hear this all the time as a habeas lawyer. And as I'm sure the court is aware, trial counsel do not want to cooperate with habeas lawyers. To suggest that a habeas lawyer can always go and get a declaration from trial counsel completely ignores reality. The allegations, if true, entitle him to relief. Therefore, if more is needed, we need the court's subpoena power and we need an evidentiary hearing because trial counsel do not cooperate with us. Now, I was not the habeas lawyer below. I don't know that to be true in this case. But just as a general matter to suggest that the absence of a declaration from trial counsel is fatal to an IAC claim just cannot be true, and this court should reject that suggestion. With respect to whether trial counsel contacted these witnesses, how he found them, you know, it's not actually a mystery. These witnesses, all three of them said no one from the defense team contacted them. That's in the record. You know, it's not possible that he contacted them. They said under penalty of perjury that he didn't. And there was no lack of candor from habeas counsel about how he found them. He said in his declaration, which is Exhibit M to the petition, that he instructed his investigator to go interview Adan Fernandez's friends and family. And that's what he did. And that's how these people were located. And as Your Honor suggested and as the district court found, these witnesses were not difficult to find. Trial counsel just dropped the ball. He believed there was nothing to be done and he did nothing. There's nothing from trial counsel's file which should not be a surprise if there was no investigation. You know, maybe there's a note that says failed to, you know, decided not to pursue Adan Fernandez's angle. But probably not. And then he's failed to investigate cases. It would be a surprise, actually, if you'd put it in your own file. I have decided I'm not going to do any investigation. I would be surprised as well. If there's a lack of investigation, there's going to be a lack of documentary evidence. This is not sort of a hide-the-ball thing. We're not trying to suggest that there's something in the trial file that is not presented to the court. If it were there, it would have been presented. I want to touch briefly upon the Brady and Iacy claims because I just, you know, there's something really unfair about counsel suggesting that this is a speculative claim when the state refuses to grant habeas counsel access to the fingerprint cards. They exist. We want them. Wasn't there a remedy to pursue that through a motion to compel or something, though? At trial? Yeah. At trial, defense counsel could have accessed them. And although counsel suggests that maybe he did, the officer testified that normally, you know, defense counsel do make these requests and that one wasn't made in this case. So defense counsel dropped the ball completely. You said something about in state habeas there was a request to get the cards? There was a request from the police department to get the cards, and the police department refused. A request made to the police department during the state habeas process? Yes, Your Honor. And the police department says, no, we're not going to give them? They say, this is still a pending investigation because there are other suspects out there. We will not disclose this evidence or the reports. So how are we supposed to? Was there any request to the habeas court for an order directing the police to hand them over? There were requests at every level in state and federal court for discovery and an evidentiary hearing, and discovery would have permitted the, you know, us to have these fingerprint cards. And the request was made to the habeas court and denied? Yes. Well, it wasn't denied. It was never ruled upon by the state court. But so this is not. . . Of course, Brady is a continuing obligation. It is a continuing obligation. I don't know how to get around the speculative nature of a Brady claim if we don't have discovery and they won't turn it over. You know, there's substantial reason to believe that these fingerprints could be exculpatory. This is an innocence case. And, you know, to suggest that we somehow should have obtained these somehow through no discovery and the stonewalling of the state is, to me, you know, incredibly unfair. Innocence of being the shooter? Yes. Not innocence all the way across the board? No. Your client was convicted of 10 counts of robbery anyway. You're not appealing that? No, we're not challenging that in this case. And that's a 13-year sentence for the robbery counts. So he's not. . . This is not. . . It wouldn't be an exoneration, but it's an innocence of the shooting. And I think, you know, the court is empowered to at least remand for discovery or an evidentiary hearing on the ISC and the Brady claims regarding the fingerprint evidence. Remand for evidentiary hearing in the district court? Yes, Your Honor. But what do we do with Penholster? That is to say, Penholster tells us we're stuck with the record made in the trial court. Is there some exception to Penholster based upon what happened in the state habeas court and refusing the discovery? Yes. How can the district court do the discovery here and then use it? Penholster does not preclude the development of evidence in federal habeas if the petitioner can satisfy Section 2254D. So once the petitioner has satisfied that provision of the statute, review is de novo and the federal court can do. . . Help me out when you say satisfied D. And so, yes. For the Brady claim and the prejudice prong of the ISC claim, the state court's decision was an unreasonable determination of the facts because it was a flaw in the fact-finding process under Section 2254D-2 because the allegations were sufficient, if proven true, to entitle Mr. Velazquez to relief, and the state court, you know, made credibility determinations, made factual findings without permitting factual development, and its determination was therefore unreasonable. Without granting an evidentiary hearing. That's correct, Your Honor. That's what I'm saying. That's correct. And Nunez v. Mueller is, I think, the case that's most close to this one where the state court, you know, rejected the petitioner's declaration about the ineffective assistance of his counsel, made credibility determinations without holding a hearing, and this court in Nunez held that that was in violation of D.2 and looked at the case de novo. So let me be clear in terms of what you're asking us to do. Yes. Are you asking us for a remand to the district court for development of the record, or are you asking us alternatively on the record as it now exists to grant? For the third-party culpability claim, this court can and should grant relief on the current record. And so I don't think the court needs to reach the issue of whether there's a remand and all of that. If the court finds that the record does not justify relief at this point, I'm asking for the court to find Section 22D satisfied for the Issa or Brady claim and remand for further factual development. Okay. Thank you. Thank you, Your Honor. Thank both sides for their arguments. Villescaz v. Noe is submitted.
judges: W. Fletcher, Miller, Pregerson